```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO: 1:21-cr-20383-KMM
 3

 4   UNITED STATES OF AMERICA,            Miami, Florida

 5        Plaintiff,                      February 16, 2022

 6            vs.                         2:02 p.m. to 2:54 p.m.

 7   PABLO ANTONIO GUERRERO MARQUEZ,
     ENER CORTES RODRIGUEZ,
 8   LEONEL GARCIA CABEZA,

 9        Defendants.                     Pages 1 to 29
     _____

10

11                         SENTENCINGS
                       BEFORE THE HONORABLE
12         UNITED STATES DISTRICT K. MICHAEL MOORE JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:        YVONNE RODRIGUEZ-SCHACK, ESQ.
                               United States Attorneys Office
15                             99 NE 4th Street
                               Miami, FL  33132
16                             Yvonne.rodriguez-schack@usdoj.gov

17
     FOR THE DEFENDANT
18   PABLO ANTONIO GUERRERO MARQUEZ:

19                             CHRISTIAN SCOTT DUNHAM, ESQ.
                               CHRISTIAN DUNHAM, PA
20                             150 West Flagler Street
                               Miami, FL  33130
21                             Christian_dunham@fd.org

22
                               CHRISTOPHER MEADOWS, ESQ.
23                             150 West Flagler Street
                               Miami, FL  33130
24                             Christopher_meadows@fd.org

25
```

```
 1
    FOR THE DEFENDANT
 2  LEONEL GARCIA CABEZA:
                             DAVID ANTONIO DONET, JR., ESQ.
 3                           DONET MCMILLAN & TRONTZ, P.A.
                             3250 Mary Street
 4                           Suite 406
                             Coconut Grove, FL  33133
 5                           Donet@dmt-law.com

 6

 7  FOR THE DEFENDANT
    ENER CORTES RODRIGUEZ:
 8                           JACOB ALAIN COHEN, ESQ.
                             LAW OFFICES OF JACOB A. COHEN PLLC
 9                           750 S. Dixie Highway
                             Boca Raton, FL  33432
10                           Jacob@jacobcohenlaw.com

11

12

13

14  STENOGRAPHICALLY REPORTED BY:

15                           SHARON VELAZCO, RPR, FPR
                             Official Court Reporter
16                           United States District Court
                             400 North Miami Avenue
17                           Miami, Florida 33128

18

19

20

21

22

23

24

25
```

```
 1              (The following proceedings were had:)

 2              THE COURTROOM DEPUTY:  United States District Court for

 3    the Southern District of Florida is now in session.  The

 4    Honorable K. Michael Moore presiding.

 5              THE COURT:  Good morning -- good afternoon.

 6              Hi.  Good afternoon, everyone.  Please be seated.

 7              THE COURTROOM DEPUTY:  Case number 21-CR-20383, United

 8    States of America versus Pablo Antonio Guerrero Marquez.

 9              Counsel, please state your appearances for the record,

10    beginning with the Government.

11              MS. RODRIGUEZ-SCHACK:  Good morning, your Honor.

12    Yvonne Rodriguez-Schack on behalf of the United States.

13              THE COURT:  Good afternoon.

14              MR. DUNHAM:  Good afternoon, Christian Dunham and

15    Christopher Meadows from the Federal Public Defenders Office on

16    behalf of Mr. Guerrero Marquez, who is present with the

17    services of a Spanish interpreter.

18              THE COURT:  Good afternoon.

19              Okay.  Do you want to take up any objection to the

20    presentence investigation report?

21              MR. DUNHAM:  On behalf of Mr. Guerrero Marquez, we have

22    not filed any objections.

23              THE COURT:  So, Probation has calculated an offense

24    level of 33 with a criminal history category of one and a

25    guideline range of 135 to 168 months.
```

1                Is that a correct calculation of the Guidelines?

2                MS. RODRIGUEZ-SCHACK:  Yes, your Honor.

3                MR. DUNHAM:  Yes, your Honor.

4                THE COURT:  Mr. Marquez, do you want to say anything on

5        your own behalf before sentence is imposed?

6                THE DEFENDANT:  First of all, I would like to say good

7        afternoon.  And, while I'd like to say that if I could ask you,

8        please, to accept my apologies for what I did, I know that I

9        made a mistake and that's the truth.  But, if I did it, it is

10       because I am a father, and I am a son, and the truth of the

11       what happened here, the truth of what happened is not to be

12       found here but rather in our towns.  I would really like it if

13       you could come to our town.  Some of us oftentimes just close

14       our mouths and don't say things, to tell you the truth, because

15       we are afraid for our families.  But, I wish you would hurry up

16       and find out the truth about all of this, because soon, there

17       will be no fisherman left in our towns.  There will be no one

18       left.

19                And, I know that what I did, you know, anyone would do;

20       anyone who is a father, who is a son, would do anything for

21       those he loved, and I did it because it is better to be here

22       than to lose someone you love.

23                Life in our towns is just like this.  We are born poor,

24       but we are not guilty of being born like this.  So, this --

25       other people may wash their hands with our poverty.  That is

1    the truth.

2           So, I wish you could take this into account, that we

3    are not drug dealers.  We are fishermen, and we are people who

4    make our living, day by day, doing honest things.

5           Your Honor, that is all I have to say.  Thank you very

6    much.

7           THE COURT:  Thank you.

8           Anything on his behalf?

9           MR. DUNHAM:  Thank you, your Honor.

10          Your Honor, this is a case involving a lot of drugs,

11   obviously, it is a thousand -- over a thousand kilos.

12          So, it is difficult for me to say, you know, certain

13   things, but, you know, we have had -- the Court has had these

14   cases year after year.  And, it is pretty much gentlemen like

15   Mr. Guerrero Marquez, who has a third-grade education, Page 10,

16   paragraph 44 of his PSI, uneducated guys who get roped into

17   this situation.

18          He lives in a wood structure with an outhouse, and so

19   there is no way that this gentleman, you know, owns thousands

20   of kilos, or produces thousands of kilos.

21          It is clear he is a fisherman who is very poor, and who

22   got involved in this to make some money.  It is very sad.

23          I think the point is that I don't necessarily think the

24   Guidelines sentence is necessary in this case under the 3553(a)

25   factors.

1          So, we would ask the Court to consider something lower

2    than the Guidelines.

3          135 months is a lot of time.  It is 11 years.

4    Mr. Guerrero Marquez wants me to ask the Court for an 80-month

5    sentence in this case.  He thinks that is more than enough time

6    for -- under the 3553(a) factors.

7          Some other things I want the Court to note from the

8    PSI; that he was abused as a child, which is Page 8,

9    paragraph 34.  His stepfather abused him and his mother for a

10   long time.

11         As I said before, he lived in a very -- extreme

12   poverty.  I think that is what the PSI said, in a wooden

13   structure.

14         He has been a fisherman since age 12; uneducated,

15   unskilled.

16         He also got into a car accident in 2019 where he had

17   some serious injuries, fractured his nose and ankle, and still

18   has some problems.

19         And, he has shown this Court some respect for the law

20   by accepting responsibility and by satisfying an element of the

21   safety valve by debriefing with the Government where he gave a

22   statement, and so I don't -- I do think the Court can at least

23   consider something below the Guidelines.

24         So, Mr. Guerrero Marquez is actual from Ecuador.

25         So, what happened in this particular case, Judge, is he

1    actually went from Ecuador to Colombia months and months before

2    this trip.  And, he was actually working in Colombia for the

3    owner of -- of a farm that he thought was just the regular

4    owner of a farm, this guy, Cuni, that came out in the

5    debriefing.

6        And -- C-U-N-I -- and so he is working in Colombia,

7    trying to just make money from Colombia to send to his family.

8    He is not involved in drugs at that time.  He doesn't know

9    anything about drugs at that time.

10        And then, one day, he is going from the soccer field to

11    play soccer with his friends, and one of the guys he works for

12    says, "Come, hey, you have to come with me, the boss wants to

13    see you."

14        They take him to the boss, and the boss says, "Hey, you

15    have to go on this trip for me.  You have to go on this boat."

16        They take him down to the boat.  The other two guys are

17    there.  He is there.  He gets on the boat, and there is a

18    thousand kilos.  And next thing he knows, he is on his way --

19    he is on his way to America.  He is on his way to Panama, the

20    coast, whatever.

21        So that's what happened in this particular case.

22        So, he wasn't actually -- yes, he pled guilty.  He is

23    totally guilty in this case.  But, he was actually in Colombia

24    just trying to work to send money to his family legitimately,

25    what he thought was legitimate, and then it turned into "We

1   will give you more money if you get on this boat," and he took

2   this opportunity.

3         So, I do think that because of the abuse he suffered as

4   a child, because of his very limited education, and because of

5   his role in the grand scheme of things -- I didn't file any

6   minor role objections because I don't think it is necessarily

7   appropriate for my client in this case.

8         But, you know, in the grand scheme of things, he is not

9   the -- his role is not as the producer of these kilos, the

10   distributors of the kilos.  His role was just to get on that

11   boat and get the drugs to America.  And, I do think he deserves

12   some kind of reduction.

13         So, we are asking the Court for an 80-month sentence on

14   behalf of Mr. Guerrero Marquez.

15         Thank you very much, your Honor.

16         The Court:  Anything from the Government?

17         MS. RODRIGUEZ-SCHACK:  Your Honor, we believe that a

18   sentence of 135 months is appropriate.  If you consider all of

19   the factors of 3553, as noted by the Court, is uncontested, the

20   defendant literally had over a ton of cocaine on board the

21   vessel.

22         And, I think that a sentence of 135 is an appropriate

23   sentence to reflect the seriousness of their conduct.

24         I also submit that I think that sentence would also

25   serve as a deterrent to other individuals that would consider

1    doing things like that.

2              Unfortunately, I have heard the defendant's request to

3    the Court to consider his situation.  But, the reality is that

4    there are many defendants, as we all know, that are similarly

5    situated like him, and are suffering economic, you know,

6    stresses and pressures, but they don't resort to a life of

7    crime in order to justify their existence.  There really is no

8    justification.

9              So, as we can -- just as we can see he is obviously

10   working elsewhere, he was able to provide for his family

11   through lawful employment and didn't have to resort to this

12   sort of thing.  So, I believe a sentence of 135 is appropriate,

13   and that is what we are asking.

14             THE COURT:  Thank you.

15             There were two other codefendants in this case,

16   defendant Cabeza and defendant Rodriguez.  And, I am happy to

17   take up those cases now.

18             The only difference that I saw in the case of

19   Mr. Marquez and Mr. Cabeza and Mr. Rodriguez is that they had

20   requested an adjustment for minor role.  Otherwise, their

21   offense levels are all the same, the criminal history

22   categories are all the same.

23             Except for the objections, I don't know if you want to

24   consolidate them and hear arguments on them so we have

25   consistency in the rulings.

```
 1            MR. DONET:  At least on behalf of -- David Donet on
 2    behalf of Mr. Garcia Cabeza, your Honor, we are fine with
 3    addressing that now, for time's sake.
 4            THE COURT:  Okay.  Go ahead.
 5            MR. COHEN:  Your Honor, good afternoon.  Jacob Cohen on
 6    behalf of Ener Cortes Rodriguez.  We would join in Mr. Donet's
 7    request.
 8            THE COURT:  So, let's take up your objections then.
 9            As I said, the Probation has calculated an offense
10    level as 33, criminal history category of one, with a
11    guidelines range of 135 to 168 months.
12            Does anybody want to speak on behalf of the objections?
13            MR. COHEN:  Your Honor, with respect to Mr. Rodriguez.
14    It is our view that a minus four, minimum participant level
15    applies, given the role that he played here.
16            You know, your Honor, I know the Government, in their
17    response, has said that Mr. Rodriguez's statement is
18    self-serving, but I have found him to be very upfront and
19    forthcoming.
20            He said he played two roles on that boat.  He says
21    number one, he would pick up a pail and take the water out of
22    the boat, and he would put gasoline inside the boat, and that
23    is all he did.
24            We feel, against the backdrop of all that, he is either
25    entitled to minus four minimum participant and -- in between a
```

1   minus three level reduction or minus four level reduction.  We

2   are asking for minus four.

3          I just had a similar case in front of Judge Gayles,

4   your Honor.  The reason why I bring it up, the Ahgulo case, and

5   I list it in my motion -- and, in that case, everything is

6   similar with respect to these defendants and the defendants in

7   that case.  The only difference is the -- is the difference in

8   the weight in terms of the drugs.

9          In that case, Judge Gayles beneficently varied to

10  72 months.  And, I am asking that that variance would be

11  justified in terms of Mr. Rodriguez.

12         And, I have other arguments for variance, your Honor.

13         But, in terms of addressing the role adjustment -- and

14  I will just focus on this, for now.

15         THE COURT:  And with respect to Mr. Cabeza?

16         MR. DONET:  Yes.  Good afternoon, your Honor.  And I --

17  similarly, I would just reiterate what I already wrote in my

18  motion.  We are seeking a two-level reduction for minor role.

19         There is no doubt -- I don't believe anyone in this

20  courtroom believes that any of these three individuals, most

21  especially Mr. Cabeza, had the money, the knowledge, the

22  sophistication and the means to acquire, produce, transport a

23  ton of cocaine.  We are talking about over $25 million, a huge

24  amount, and there is no running away from that.

25         But, at the end of the day, Mr. Cabeza is a young man

1    whose father was murdered when he was only eight years old.

2    He went to live with his grandparents.

3         He only had a second grade education.  There is -- he

4    is nothing more than a worker ant at the mercy of the drug

5    lord, and that's all he is.

6         And, we can sit here and say, "Well, he is only being

7    judged based on his role compared to the other three."

8         But, that's just running away from the truth of the

9    matter.  This is a huge conspiracy, a huge organization.  He

10   was given a debriefing.  He was enough to satisfy the

11   Government as for the 5-K with names and a lot of detail.  I am

12   sorry, not for the 5-K, but for the safety valve.  I misspoke.

13   So, he did what he could.

14        But, to these drug lords, he is expendable.

15        And, I disagree with the Government that a 135 months

16   sentence is a deterrent to anyone in their situation.

17        We believe, your Honor, that a sentence of 80 months is

18   a sentence that would be sufficient to punish him, whack him

19   over the head with a good strong hammer.  It is still a

20   significant sentence of over seven years in prison, and it will

21   be enough to satisfy the factors under 3553.

22        Thank you, your Honor.

23        THE COURT:  Thank you.

24        Let me make a couple of comments, if I might.

25        There is a legal analysis that is associated with this.

1   It is the De Varon analysis, and that is -- I know you are

2   familiar with that, and that is to look at the charged conduct

3   and, in this case, the conspiracy between three individuals to

4   bring in cocaine to the United States; and, to look at that

5   charge, conspiracy, then look at their particular role in that

6   charged conspiracy, not some larger conspiracy, as you have

7   alluded to.

8          Had we looked at some larger conspiracy, which is what

9   you are suggesting that I do, it might well be that -- that

10  that conspiracy would involve a much larger quantity of cocaine

11  than the cocaine in this particular load.

12         If they were charged, in that hypothetical, larger

13  conspiracy, with that much larger quantity of cocaine, then the

14  guideline would have been driven by that quantity versus the

15  quantity in this case, whether we like it or not.

16         And, we are just doing guideline calculations.  If that

17  were the case, then their base offense level would have been

18  increased because of the larger quantity that we are dealing

19  with.  And from that standpoint, in that conspiracy, they might

20  have been considered a minor or minimal participant.  We would

21  have made the adjustment, Probation would have made the

22  adjustment, and we would have arrived at a different base

23  offense level which, in all likelihood, based on my

24  experience -- maybe I am wrong -- would have been greater than

25  the base offense level in this case.

1          Maybe I am wrong.

2          So, by being charged with the lesser conspiracy in this

3     case, and evaluating their conduct in this particular effort to

4     transport cocaine, they actually wind up with a lower base

5     offense level than they would otherwise.

6          We can agree or disagree as to the wisdom of that

7     analysis, or the Guidelines in terms of how they apply that.

8     That's what it is.  We are being asked to consider the

9     Guidelines, and correctly calculate the guidelines, and that's

10    where we are.

11         And so they are not -- under that analysis or that

12    De Varon analysis, they are not entitled to a minor, minimal

13    role adjustment for the conspiracy that is charged in this

14    offense.

15         So, on that basis, the motion should be denied.

16         Does that address that issue?

17         MR. COHEN:  It does, your Honor.

18         And, on behalf of Mr. Rodriguez, we respectfully

19    object.

20         THE COURT:  So, I note the objection, and I will deny

21    it.

22         And, I will do that just -- not only with respect to

23    Mr. Rodriguez, but Mr. Cabeza.

24         Are there any other objections?

25         MS. RODRIGUEZ-SCHACK:  No.  I just wish to bring to the

1    Court's attention that, as noted correctly in the PSI, and

2    certainly not being disputed, these defendants are being held

3    liable for 1,183 kilograms of cocaine, which gives them a base

4    offense level of 38, which, pursuant to the Guidelines,

5    anything above 450 will get you the same base offense level.

6          So, they would start at the same base offense level;

7    however, the Court is correct that if they had been held liable

8    for the entire conspiracy, these defendants would have been

9    subject to other adjustments that would have given them

10   enhancements.

11         So, I just wanted to clarify that report.

12         THE COURT:  Okay.  Are there any other objections to

13   the PSI?

14         What we are doing right now is just considering the

15   objections to the PSI, considering the sentencing guidelines,

16   and correctly calculating the guidelines based on the Guideline

17   applications and any objections.  Is that a correct calculation

18   of the guidelines; 33, criminal history of one, and 135 to 168

19   months?

20         MR. DONET:  Yes.  Your Honor, on behalf of Mr. Garcia

21   Cabeza, that that is the correct calculation of the Guidelines

22   based on your objection, which we also --

23         THE COURT:  You are preserving your objections?

24         MR. DONET:  We are preserving, yes.

25         THE COURT:  All right.  We have heard from Mr. Marquez.

1        Mr. Rodriguez, do you want to say anything on your own

2   behalf before sentence is imposed?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  Go ahead.

5        THE DEFENDANT:  I would like to say -- I would like to

6   say, your Honor, that in that word, I ask your Honor from the

7   bottom of my heart to accept my apologies.  I am very sorry.  I

8   apologize to you and your beautiful family.

9        From my heart, I apologize to this country, and to this

10   city.

11        I apologize to you as attorneys, the U.S. attorney and

12   to her family.

13        I am, your Honor, a humble person, a very poor person.

14   I apologize to this country.

15        I want to say that I am a displaced person.  I have

16   been displaced by the violence in Colombia.  I am a person who

17   was raped when I was nine years old.  I am not embarrassed to

18   say this, by my mother's husband.  He cut my finger.  Let me

19   show you.

20        Your Honor, I ask you, from the bottom of my heart, for

21   my family, for my children, who depend on me, because your

22   Honor, I am their sustenance.  They need me.  From my heart, I

23   ask you, I am talking as a person who was uneducated because my

24   parents did not have enough money to send me to school.  I thus

25   had to work construction because I did not -- I could not get a

1    steady job working for a company because I could not go to

2    school.

3           I ask you for your forgiveness.

4           Your Honor, when I was with my wife, I was given a

5    one-month-old child.  I didn't even know the woman who dropped

6    him at my house, and today, your Honor, he is nine years old.

7    Through my own efforts, I have raised him, and I am proud when

8    he calls me dad and when he calls my wife mom.

9           So, your Honor, I apologize to you for finding myself

10   in this situation, and I also thank God because I know that He

11   is great and He does great things.  Who knows, we could have

12   drowned, we could have died on this boat.  But, God is all

13   powerful, and I am here to be able to tell you of this tale.  I

14   apologize to you.  I apologize to the U.S. attorney, and may

15   God bless you.  Amen.

16          THE COURT:  Thank you.

17          Mr. Cabeza?

18          THE DEFENDANT:  First of all, I would like to apologize

19   to your Honor and to the U.S. attorney and to all of you who

20   are present here today -- and, to the United States for this

21   mistake.

22          I know that I should not be here.  I am a good person.

23   And, unfortunately, life has put me in this situation.

24          I am a poor, humble person.  My dad was killed when I

25   was eight years old, and I was raised by my grandparents that

1    could not go to school.  So, I learned how to fish, and that is

2    all I have ever been able to do because I knew nothing else.  I

3    apologize for my mistake, and that is all.  Thank you.

4          THE COURT:  Thank you.  Okay.  We have heard from all

5    three defendants.

6          Anything more on behalf of each defendant from defense

7    counsel?

8          MR. DUNHAM:  No, your Honor.  Thank you.

9          MR. COHEN:  Your Honor, on behalf of Mr. Rodriguez, I

10   just want to reiterate the experience he talked about, just one

11   more thing in terms of the support of the variance arguments.

12         I have had the opportunity to speak with Mr.

13   Rodriguez's family via What's App video.  I have seen the

14   residence that he has lived in.  He lives in a very poor

15   socioeconomic bracket in his country in Colombia.

16         The wife has no money.  The three kids hardly have

17   anything to eat.  Mr. Rodriguez testimony to you regarding the

18   stepchild that he has, that is a stepchild that was left on the

19   porch in his house.  They knew the mother, and the mother just

20   didn't return.  And, they -- they graciously raised this child,

21   and he is now 9, 10 years old.  And, I have had the time and

22   opportunity to speak to all of them.

23         Your Honor, there is no question you have to send a

24   message of deterrence.  But, we are also asking you to exercise

25   your discretion and grant the variance in the way we have

1   asked, based on his circumstances.

2       His family meets the facts.  They didn't have a father

3   that raised them.  So, to have a positive direction in their

4   lives, they need him to have a positive direction.

5       THE COURT:  Thank you.

6       MR. DONET:  Only very briefly, your Honor.  A sentence

7   less than the guideline sentence range, if your Honor would

8   exercise that discretion, is more than sufficient to satisfy

9   all the factors under 18 U.S.C. 3553.

10      Thank you, your Honor.

11      THE COURT:  Thank you.

12      Anything from the Government?

13      MS. RODRIGUEZ-SCHACK:  No, sir.

14      THE COURT:  So, with respect to these individual

15  defendants, and we have calculated the guidelines.  We have

16  considered them.  We have arrived at the guideline range,

17  noting your objections, and we have heard the argument of

18  counsel for variance.  I don't think a variance is appropriate

19  or justified in this case.  And, one of the reasons -- a couple

20  of reasons I say that is because the arguments are, as I hear

21  them anyway, are based on their economic circumstances.

22      And, as unfortunate as that may be -- and I am not

23  disputing that at all -- they are the economic circumstances

24  that literally hundreds, thousands -- if not hundreds of

25  thousands, if not millions of people are similarly situated in,

1    and that does not justify those other individuals, or has not

2    caused those other individuals to engage in criminal behavior,

3    much less this type of criminal behavior.

4          So, I think the notion that there should be a departure

5    or variance based on that basis is not warranted.  I understand

6    that I -- have the discretion to do so.  But, the other reason

7    why not to exercise that discretion is because for better or

8    for worse, we have seen literally tens, if not hundreds of

9    these cases, within this District.  And, I can speak for myself

10   that I have seen many, many, many of these cases.  And, in

11   terms of the appropriate application of the Guidelines of the

12   cases that I have seen, these defendants are similarly

13   situated.  They live in or they claim to live in one degree of

14   impoverished state or another.  But -- they tend to be fathers,

15   they tend to be husbands, living in poor economic environments,

16   and because of that, they are tempted to engage in criminal

17   behavior for economic reasons.  And, I assume some of them get

18   caught and some of them don't.  And, these were some of the

19   ones that got caught.

20         And, these defendants are not really dissimilarly

21   situated from any of those other defendants, which is one of

22   the purposes behind the Guidelines, to impose sentences that

23   are consistent with similarly situated defendants who have

24   committed similar crimes.

25         And, I understand that there may be instances where

1   judges in this district depart, for one reason or another, or

2   vary, from one reason or another.

3          But, at least in this Court, these defendants are not

4   so dissimilarly situated that they would justify either a

5   variance or departure.  So, I think for the sake of consistency

6   in the Guidelines, a sentence of 135 months is appropriate.

7          But, let me say this.  Let me add this to just sort of

8   anecdote or footnote.

9          These comments are more directed to the prosecution.

10          And, this is a prosecutor who handles these types of

11   cases on a regular basis.  And there are the -- not the only

12   ones who handle these cases in that office -- but we have these

13   cases today.  I had a similar case last week, and we have had

14   plenty of them, more than I care to count.

15          But, yesterday -- and I don't know how well the

16   office -- the U.S. attorneys talk about these cases internally.

17   But, yesterday, we had the -- I sentenced someone -- and I may

18   be a little rough around the edges in terms of my facts, so

19   don't hold me to this.  But, the prosecution, in my opinion,

20   manufactured the charges that the individual defendant was

21   charged with so as to circumscribe the Court's sentencing

22   authority.

23          Now, I thought we were operating on the premise that

24   the Government was supposed to charge the most readily provable

25   charge, right?

1        So, maybe they -- maybe they did, maybe they didn't.  I

2   am not going to question the motive there.

3        But, in any event, the defendant's counsel came into

4   Court with the prosecutor, and the prosecutor touted the fact

5   that he had worked in the Colombian Embassy for five years

6   trying to develop who the people were that were behind the drug

7   distribution that eventually led to individuals such as the

8   defendants here in court today, and that caused these drugs to

9   be -- have their ultimate destination in the United States.

10  So, this was their, for lack of a better word, the big fish

11  that they had gotten.

12       And, they had gotten him -- they had got him to

13  cooperate.  He did so at considerable risk to his own personal

14  safety.  Nevertheless, he was instrumental in the prosecution

15  and successful conviction of other individuals.

16       And so, he was charged and he pled guilty, and they

17  worked out a plea agreement.  And time came for sentencing, and

18  he was certainly entitled to consideration for his cooperation.

19  But, because of the machinations of what he was charged with,

20  he was looking at a base offense level of a Guidelines range of

21  somewhere in the vicinity of 200 some-odd months, 235.  I

22  forget what it is.

23       And, the prosecutor said, "Well, this guy -- this

24  fellow has done such an outstanding job cooperating" -- I think

25  he was described on the El Chapo level -- okay, that therefore,

1    he shouldn't get a third off of his sentence, which I

2    considered a considerable reduction for cooperation, which

3    these defendants are probably not going to get because their

4    role in that large conspiracy that they were not charged with,

5    they probably don't have anybody they can tell you about that

6    is sufficient to justify reduction.

7          But, in any event, this individual yesterday was so

8    important that he was not just entitled to a one-third

9    reduction.  He was entitled to a 50 percent reduction.

10          And -- and that meant that he was going to be looking

11    at one -- if my math is correct -- and don't hold me to this

12    now -- but he was going to be looking at 151 months.

13          Is that right?

14          Okay.  151 would have been a third off.  50 percent,

15    which is what the Government was asking for, would have been

16    less than what these defendants were looking at.

17          And, he was the supplier -- the Government said that he

18    supplied probably 85 percent, at least, of all the cocaine that

19    came into the United States, and they wanted to give him less

20    than what these defendants were looking at today.

21          This is what your office was advocating.

22          Okay?

23          And -- and, on top of that, he was so valuable that he

24    was going to continue to cooperate.  And, if he did, they were

25    going to come back again and ask for a further reduction.

1          And I had to, at some point, you know, say, "Well, you

2    know, at what point are we going to be issuing this defendant a

3    letter of apology for having indicted him in the first place?"

4          Now, this prosecutor, who professed to be experienced

5    and, you know, well-versed in these things, you know, mentioned

6    to me that -- as I said, he had spent five years in the U.S.

7    Embassy in Colombia.  I didn't ask him this.  Maybe I should

8    have.

9          But, maybe, you know, I would suggest that -- that not

10   that he spend five years, not that he spend five days, not that

11   he spend five hours, but ask him to spend five minutes in the

12   Neonatal Intensive Care Unit at Jackson Memorial Hospital and

13   watch newborn babies come out addicted to cocaine because of

14   this kind of activity.

15         I didn't ask him that.  I am not trying to be

16   melodramatic or theatrical about it.

17         But, the idea that -- and I won't even get into this

18   defendant's prior history there.  But, that the Office of the

19   United States Attorney can come into Court and take these

20   positions -- this is really hard to reconcile.

21         I mean, I am not suggesting any bad faith.  But, you

22   know, the District Court has to perform its sentencing role.

23   And, by making whatever criticism I make is not meant to

24   undermine or undercut the seriousness of the offenses and the

25   sentencing before the Court today.

1              But, I do think there has to be some sort of

2       reconciliation between who gets charged, what they get charged

3       with, and what they get sentenced to.

4              And, these defendants are going to be sentenced

5       according to what they did.  It is a serious offense.  They

6       should be sentenced accordingly.

7              But, there is a real juxtaposition between today's

8       sentences and yesterday's sentencing, and I think it is up to

9       the U.S. Attorney to have a coherent position and a coherent

10      strategy.  I don't see that, humbly, between yesterday and

11      today.  Maybe I'm missing something, but -- you know, I

12      think -- but that's what I am seeing, okay?

13             Anything else?

14             PROBATION OFFICER:  Your Honor, we have not addressed

15      the terms of supervised release.

16             THE COURT:  Okay.  I saw the terms of supervised

17      release is two to five years for each defendant; is that

18      correct?

19             PROBATION OFFICER:  Yes.

20             THE COURT:  Okay.  All right.  If there is nothing

21      else, the Court has considered the statements of all parties,

22      the presentence reports which contain the advisory guidelines

23      and the statutory factors as set forth in Title 18 United

24      States Code Section 3553(a).

25             The Court finds that each defendants meet the criteria

1   set forth in 5C1.2, Title 19, United States Code Section

2   3553(f) 1 through 5.

3            Therefore, sentence will be imposed in accordance with

4   the Advisory Guidelines, without regard to any statutory

5   minimum sentence.

6            A sentence will be imposed at the low end of the

7   advisory guideline range as this will provide sufficient

8   punishment and deterrence.

9            It is the finding of the Court each defendants is not

10  able to pay a fine.

11           It is the judgment of the Court the defendant Pablo

12  Antonio Guerrero Marquez, and Ener Cortes Rodriguez, Leonel

13  Garcia Cabeza, are each committed to the Bureau of Prisons to

14  be imprisoned for 135 months as to Count 1.

15           Each -- upon release from imprisonment each defendant

16  shall be placed on supervised release for a term of three years

17  as to Count 1.

18           Within 72 hours of release, each defendant shall report

19  in person to the Probation Office in the District where

20  released.

21           While on supervised release, each defendant shall

22  comply with the mandatory and standard conditions of supervised

23  release which include not committing any crimes, being

24  prohibited from possessing a firearm or other dangerous device,

25  not unlawfully possessing a controlled substance, and

1    cooperating in the collection of DNA.

2         Each defendant shall also comply with the following

3    special conditions; surrender to Immigration for removal after

4    imprisonment, any unpaid restitution and fines, special

5    assessments as noted in Part F of the presentence investigation

6    report.

7         It is further ordered that each defendant shall pay to

8    the United States a special assessment of one hundred dollars

9    as to Count 1.

10        Now that sentence has been imposed, does the defendant

11   or his counsel object to the Court's finding of fact or the

12   manner in which sentence was pronounced?

13        MR. DUNHAM:  On behalf of defendant Marquez, no, your

14   Honor.

15        MR. COHEN:  Other than the objection noted, your Honor,

16   no.

17        MR. DONET:  Same, your Honor, other than the objection

18   that you had overruled.  So, no.

19        THE COURT:  Does each defendant understand that they

20   have the right to appeal the sentence the Court has imposed?

21        Mr. Marquez?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Mr. Rodriguez?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Mr. Cabeza?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Anything further?

3              MS. RODRIGUEZ-SCHACK:  The United States would move to

4     dismiss the remaining counts, your Honor.

5              THE COURT:  Granted.

6              MR. DUNHAM:  Thank you.

7              MR. DONET:  Thank you.

8              MR. COHEN:  Thank you.

9              (Proceedings adjourned at 2:54 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3              I hereby certify that the foregoing is an

 4     accurate transcription of the proceedings in the

 5     above-entitled matter.

 6

 7     April 27, 2022        /s/Sharon Velazco
       DATE                   SHARON VELAZCO, RPR, FPR
 8                            Official Court Reporter
                              United States District Court
 9                            400 North Miami Avenue
                              8th Floor
10                            Miami, Florida 33128

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```